IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**CARL PORTER (# R7051)**                                                                       **PLAINTIFF**

v.                                                                                                                             **No. 4:19CV49-RP**

**GLORIA CARTER**
**DR. TONY CARSWELLO**
**C.O. VICTORIA ECKFORD**
**C.O. HONEYCUT**
**NURSE PRACTITIONER ANGELA BROWN**                                      **DEFENDANTS**

**MEMORANDUM OPINION**

      This matter comes before the court on the *pro se* prisoner complaint of Carl Porter, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The court conducted a hearing as set forth in *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985), to better understand the *pro se* plaintiff's claims. The plaintiff alleges that the defendants failed to protect him from attack by other inmates, failed to provide him with adequate medical care, and used excessive force against him.

      For the reasons set forth below, the plaintiff's allegations against defendants Dr. Tony Carswello and Nurse Practitioner Angela Brown will be dismissed for failure to state a claim upon which relief could be granted. In addition, the plaintiff's claims regarding denial of adequate medical care will be dismissed for failure to state a constitutional claim. Mr. Porter's claims against Gloria Carter, C.O. Victoria Eckford, and C.O. Honeycut for failure to protect him against attack by other

inmates will proceed. Finally, the plaintiff's claim against C.O. Honeycut for use of excessive force will also proceed.

## Factual Allegations

On October 4, 2018, in Unit 30-A, B-zone of the Mississippi State Penitentiary, plaintiff Carl Porter showered, then went to the bathroom sink to wash his laundry. The inmate from Bunk #119 then came into the bathroom to brush his teeth. The guards' shift change took place, and C.O. Victoria Eckford called out for inmate Collins to come to the tower and accused him, in front of the other inmates, of masturbating on C.O. Carter. Carter had told Eckford that someone with glasses had masturbated on her earlier that night, but she was not sure which inmate. The inmate from Bunk #119 then yelled out that inmate Collins was not the culprit, it was inmate Porter (the plaintiff). Bunk #119's gang member friends also accused Porter of masturbating on the female guard. Porter protested that he did not do so, but, as he made his way through the bathroom on his way back to his bunk, Bunk #119 hit him in the jaw with a weapon (a lock placed in a sock). Other inmates joined the attack on the plaintiff. The blow broke his jaw on the right side. Two other inmates told the attackers to stop (to keep from killing him), while the officers (Carter and Eckford) made no effort to stop the attack and did not call for backup. Neither did the two officers call to ensure Mr. Porter received medical attention.

Porter's mouth bled profusely on the floor, and he spit blood out of his mouth into the sink. Neither officer tried to help him, though both saw the blood. They walked away, talking among themselves. C.O. Eckford called Bunk #119 into the hallway to speak, and the plaintiff continued spitting blood, this time into empty milk boxes, filling three of them.

Porter waited in pain for lunch so that he could report the attack. When at lunch, C.O. Honeycut was working by himself in the kitchen, but the plaintiff was afraid to tell him about the

incident in front of his attackers. He wrapped up his sandwich and walked toward the Administration Building. Honeycut ordered him to return to the dining area because visitation was taking place in the Administration Building. Porter ignored the order and kept moving and entered the building and sat in a chair. As Honeycut approached him, he spit blood on some tissue to show that he was injured. Honeycut ordered him back to his building. Porter explained that he was not the culprit. He also told Honeycut that inmates there had broken his jaw with a lock in a sock, but Honeycut said he did not care – that Porter had exposed himself to the female officer – and he believes his officer.

Porter told Honeycut that he feared for his life if he returned to the unit because his attackers were still there. When Porter refused to leave, Honeycut said "I don't care," sprayed him in the face with mace, and ordered him back to his zone. Once outside, Porter fell to his knees and begged Honeycut not to return him to the zone. Honeycut told Porter that if he did not get back on the zone, he would call 6 inmates from A-zone to beat him and drag him back to the zone. Honeycut then said he would return Porter to the zone blinded by mace and handcuffed – defenseless.

As Porter re-entered the zone, the gang members who had attacked him also entered and stated, "You stupid motherfucker, look at you, you thought you could get away, but he's throwing your stupid ass back on the zone, but don't you worry, we got something for you bringing heat on the zone." Honeycut heard the threat, but put nonetheless put Porter back on the zone. Honeycut checked with C.O. Eckford, asking if Porter was the one who masturbated, and Eckford replied, "Yes." Porter tried to tell them it was not him – and spit blood on the floor in front of them to show that he was injured. Honeycut told him to stop spitting blood on the sidewalk, and Eckford said that Porter had injured his own mouth to make it bleed. She also told Honeycut that only one inmate hit Porter, and the incident was over (and thus Porter was in no danger). Porter's cuffs were then removed when he was returned to the zone.

Once back on the zone Porter went to the bathroom to wash off the mace. While washing up, Porter noticed Bunk #119 and three of his fellow gang members talking to C.O. Eckford. Once cleaned up, Porter went to Bunk # 152 and was talking to the guy in bed #150 when he was again attacked by gang members. His attackers hit him in the left side of his jaw, and he heard a pop. Porter dropped to the floor and balled up to protect his face, and the inmates kept attacking him. Someone said, "Open up, bitch. We want that face. I bet after this you won't bring no more heat on this zone." After a while another gang member said, "That's enough. Don't y'all kill him." The beating stopped.

Porter went again to the bathroom to wash off the blood and spit copious amount of blood into the sink. C.O. Eckford watched the entire episode from the tower and took no action. Porter was afraid to try to leave the zone and seek help after Officer Honeycut had threatened him previously.

On October 14, 2018 (Sunday) and October 15, 2018 (Monday) the morning pill call nurse made rounds to pass out medication to the inmates. She asked Porter, "What's wrong with your face?" Porter said, "I think my jaw is broken." He did not tell her more because he did not want his attackers to overhear him. Porter returned to the zone and filled out a sick call request, and gave it to the nurse (Nurse Miller). On Tuesday, October 16, 2018, he went the Mississippi State Penitentiary hospital at Unit 42. The x-ray technician conducted an x-ray and determined that Porter's jaw was, indeed, broken in two places, and several teeth were misaligned.

Porter was admitted to the hospital and given a pain shot once he was placed in a room. He tried to tell Lt. Ms. Falona about the attack, but she would not listen. He also spoke with Corrections Investigation Division and requested Red Tags on his attackers so that they would not be housed together. His request was rejected.

Porter was then transported to see Dr. Char Vanmeter in Brandon, Mississippi, on October 19, 2018, where he was x-rayed again. There was a five-day delay in obtaining x-rays because there were

not enough officers on duty to transport Porter to the hospital. On October 24, 2018, Dr. Vanmeter performed surgery to repair Porter's jaw at Merritt Hospital in Jackson, Mississippi. The surgeon inserted two plates with screws and wires to hold the bones together. The surgeon removed the wires on November 9, 2018, and ordered a soft diet – so that Porter's mouth would continue healing properly. Porter was discharged from the hospital on November 13, 2018. He was placed in general population in Unit 28, with braces in his mouth. According to Mr. Porter, two of his attackers are currently housed in his unit.

Porter claims that the Mississippi State Penitentiary medical staff are providing improper care for his broken jaw. He was on a liquid diet after surgery, rather than a soft diet during his stay in Unit 42, even though the diet order was placed in his electronic medical record on November 9, 2018. He did not receive a soft diet when he was transported to Unit 28. Nurse Angela Brown provided him with only 12 ibuprofen for pain relief after his release from Unit 42. His right ear, eye, and his head hurt badly. The pain has disrupted his sleep. Several of his teeth are still loose and cause him pain. His jaw remains out of alignment. He is in pain, and he cannot eat enough. His chin has no feeling. Porter also claims that C.O. Victoria Eckford and C.O. Gloria Carter failed to protect him when they falsely accused him of masturbating, left him in the zone with gang members, and took no action during the attacks. Defendant Eckford again failed to protect him during the second assault. Porter claims that Dr. Tony Carswello refused to honor the soft diet order from Dr. C. Vanmeter; Dr. Carswello said that Porter broke his food up to eat it in the hospital, and he can do the same in prison.

## Denial of Medical Treatment

Mr. Porter has not stated a constitutional claim for denial of adequate medical treatment. In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which]

constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986).

In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

"Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d

493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

In this case, Mr. Porter received medical treatment, but he believes that he should have received different treatment. He received a liquid diet, rather than a soft diet after his release from the hospital after surgery. Thus, he received one of two types of diet that would enable him to eat after surgery to his jaw. In addition, he claims that he did not receive a soft diet when he was transferred to Unit 28; instead, Dr. Carswello told him to break his food into small pieces. A treating physician in prison is not required to follow the treatment protocol of another doctor, even a specialist. *Gobert v. Caldwell*, 463 F.3d 339, 350, n. 32 (5th Cir. 2006). Finally, Mr. Porter believes that Nurse Angela Brown should have prescribed more pain medication than she did. This allegation is simply his disagreement with the treatment prescribed and does not rise to the level of a constitutional claim. None of Mr. Porter's allegations state a claim for denial of medical care; as such, they will be dismissed for failure to state a claim upon which relief could be granted. For this reason, defendants Dr. Tony Carswello and Nurse Practitioner Angela Brown will be dismissed with prejudice from this suit.

**Conclusion**

For the reasons set forth above, Mr. Porter's allegations regarding denial of adequate medical care will be dismissed with prejudice, as will defendants Dr. Tony Carswello and Nurse Practitioner

Angela Brown. His claims against Gloria Carter, C.O. Victoria Eckford, and C.O. Honeycut for failure to protect him from attack by other inmates will, however, proceed, as will the plaintiff's claim against defendant Honeycut for use of excessive force. A process order will issue separately.

**SO ORDERED**, this, the 23rd day of August, 2019.

/s/   Roy Percy
UNITED STATES MAGISTRATE JUDGE